(58 South. 691.)

No. 19,032.

Succession of GALLIA.

(Nov. 13, 1911. On Rehearing, Dec. 11, 1911. On the Merits, April 22, 1912.)

*(Syllabus by Editorial Staff.)*

1. APPEAL AND ERROR (§ 325*)—PARTIES—JOINDER.

Where an attorney for absent heirs files a motion against an executor, an attorney, and a notary for a rule requiring them to show why they should not be denied compensation, and the three respondents joined in their answer, and they were all named in a special judgment making the rule absolute, they were entitled to join in a motion for an appeal, though their interests were separate.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1810–1813; Dec. Dig. § 325.*]

2. APPEAL AND ERROR (§ 382*)—REJECTION OF CLAIMS—APPEAL BOND.

For the suspensive appeal from a judgment rejecting a claim against a fund in the possession of the court, a bond for costs in an amount fixed by the judge is sufficient.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2036–2041; Dec. Dig. § 382.*]

3. APPEAL AND ERROR (§ 325*)—PARTIES—SEPARATE APPEAL.

Where the interests of the appellants in the matter of the homologation of the accounts of a succession were separate, their appeals were separate, although they applied in one motion for the appeal, and the appeal was granted in one order.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1810–1813; Dec. Dig. § 325.*]

4. APPEAL AND ERROR (§ 47*)—JURISDICTION ON APPEAL.

In matters incident to the settlement of a succession and a distribution of its funds, the jurisdiction of the appellate court depends upon the amount of the assets of the succession, and not upon the amount claimed by the appellants.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 202–225; Dec. Dig. § 47.*]

5. EXECUTORS AND ADMINISTRATORS (§ 128*)—ACTION BY EXECUTOR—DISMISSAL OF APPEAL.

Under Civ. Code, art. 1680, providing that the powers of the testamentary executor do not go to his heirs, the legal representatives of a deceased executor cannot consent to the dismissal of an appeal taken by the executor officially.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 531, 532; Dec. Dig. § 128.*]

6. SEQUESTRATION (§ 15*)—PROPERTY OF ESTATE.

The sequestration of the property of an estate, though depriving the executor of its custody and control, does not deprive him of the legal right of possession given him by the will and by the law; the sequestration being a mere conservative measure not affecting the legal rights of the parties.

[Ed. Note.—For other cases, see Sequestration, Cent. Dig. §§ 25–32; Dec. Dig. § 15.*]

7. APPEAL AND ERROR (§ 334*)—DEATH OF APPELLANT.

Where the will had been fully executed and the heirs had been recognized and been present through their agent, and all debts of the succession had either been paid or adequately provided for by bond, so that no one had any real interest in requiring the appointment of an executor, it was not ground for the dismissal of an appeal that the appellant succession was without representation because the executor had died and no successor had been appointed.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1848, 1851–1863; Dec. Dig. § 334.*]

8. EXECUTORS AND ADMINISTRATORS (§§ 501, 504*)—COMPENSATION — RULE—SUFFICIENCY.

A rule taken by the attorney for absent heirs upon the executor and the attorney for the succession, which alleged that, by reason of the mismanagement of the estate by the executor and by his attorney, they were neither of them entitled to compensation, was insufficient; it being essential that the acts of mismanagement be specifically stated.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 2072, 2140, 2142–2148; Dec. Dig. §§ 501, 504.*]

Appeal from Civil District Court, Parish of Orleans; Porter Parker, Judge.

Succession of Evo Gallia, alias George E. Gail. From the judgment rendered, Wend-

ling Miller, as executor and individually, and others, appeal. Motion to dismiss appeal denied, judgment set aside, exception of vagueness maintained, and rule dismissed as in cases of nonsuit.

A. J. Cahill, Chas. A. Butler, and Chas. F. Claiborne, for appellants Cahill and others. James B. Rosser, for appellant testamentary executrix. James Legendre and Dupré & Dupré, for appellee heirs. Dinkelspiel, Hart & Davey, for civil sheriff.

### On Motion to Dismiss Appeal.

PROVOSTY, J. Wendling Miller qualified as the testamentary executor of the de cujus with seisin. The inventory of the estate showed $80,949.41. It was made by J. J. Woulfe, notary. A. J. Cahill was the attorney of the succession.

In March, 1911, one Stijepo Dezin filed a petition, in which he alleged that four certain persons named in the petition were the legal heirs of the decedent, and that he was their attorney in fact, and asked that the said heirs be put in possession of the estate upon their giving bond for the debts of the succession.

On the 24th of the same month the testamentary executor filed an answer to the said petition. He denied that the petitioners were the legal heirs of the decedent.

On the 28th of the same month a creditor took a rule on the executor to show cause why he should not file an account of his administration.

On the 29th of the same month Stijepo Dezin, alleging himself to be the attorney in fact of the heirs, took a rule on J. J. Woulfe, notary, and A. J. Cahill, attorney of the succession, to show cause why the amount of their fees should not be fixed.

On the same day Woulfe and Cahill filed an answer denying that the persons represented by Stijepo Dezin were the legal heirs of the estate, and alleging that, in any event,

the heirship of said persons was being litigated, and, until same was determined, said persons were without quality to stand in judgment on such a rule, and that the said fees could not be fixed until the administration of the estate was completed.

On April 5, 1911, the court, of its own motion, appointed an attorney for absent heirs; and the appointee at once qualified.

On April 7, 1911, the executor filed a provisional account, consisting of a list of assets and debts, except costs of administration.

Instead of a statement of the costs of administration, there was the following:

"Costs of administration, inheritance tax, etc., to be determined in subsequent account."

Among the debts was that of a legacy of $100 to St. John's Church—the only legacy made in the will.

On the same day the Austrian-Hungarian consul filed a petition alleging that the decedent was a citizen of Austria-Hungary, and that under the treaties between the United States and Austria-Hungary the consular agents of these countries have the right to act as the representatives of the absent heirs or creditors of any citizen of their country who dies in the other country until such absent heirs or creditors are represented by attorneys in fact of their own selection, and praying to be appointed as the representative of the absent heirs of the decedent in place of the attorney for absent heirs appointed by the court.

On the same day, April 7, 1911, the court, of its own motion, ordered a judicial sequestration of the property of the estate; and, under this writ, the sheriff took possession of all the property of the estate. From that order the executor has not appealed.

On April 10, 1911, the attorney for absent heirs took a rule on the executor and on A. J. Cahill, attorney, to show cause why they should not be decreed to have forfeited

all right to compensation for the services rendered by them to the estate, and on Woulfe, notary, to show cause why his fee as notary for making the inventory should not be fixed as provided by law.

On April 11, 1911, Stijepo Dezin filed an opposition to the claim of E. Young for $800 appearing on the account, and to certain other debit items of the account.

On April 28, 1911, the attorney for absent heirs and Stijepo Dezin filed their answers to the petition of the Austrian consul.

On the same day, April 28, 1911, after trial, the rule taken by the heirs to be recognized and placed in possession was made absolute to the extent of recognizing them as the legal heirs and recognizing Stijepo Dezin as their agent. The demand of the said heirs to be put in possession was reserved for further adjudication.

From that judgment no appeal has been taken.

On the same day, April 28, 1911, the rule of the Austrian consul was dismissed.

From that judgment no appeal has been taken.

In the same judgment, the attorney for absent heirs was granted his discharge, and that officer, from that moment, went out from office.

On May 1, 1911, the account of the executor was homologated in so far as not opposed.

On May 15, 1911, the executor, the notary, and the attorney of the succession filed their answer to the rule taken on them by the attorney for absent heirs on April 10, 1911.

Among other defenses they urged that, the appointment of the attorney for absent heirs having been vacated by judgment of the court, and that officer having acquiesced in said judgment, there was no longer any person having quality to stand in judgment in the rule taken by the said attorney for absent heirs.

On June 26, 1911, the court, after trial, rendered judgment on the oppositions to the account of the executor. It reduced from $800 to $100 the claim of E. Young.

From that judgment E. Young obtained an order for suspensive and devolutive appeal; but, so far as the present record shows, has not perfected the appeal by giving bond.

On the same day, the court, after trial, rendered judgment on the rule of April 10, 1911, taken by the attorney for absent heirs on the executor, the notary, and the attorney of the succession. The rule was made absolute, the executor and the attorney were decreed not to be entitled to any compensation, and the fee of the notary was fixed at $20.

On the same day, June 26, 1911, the court rendered judgment sending the heirs into possession, and ordering the sheriff to deliver the estate to their agent, Stijepo Dezin, after payment of the debts of the succession as fixed in the judgments homologating the account of the executor, and after payment of the inheritance tax, fixed at $3,402, and upon the heirs furnishing bond in the sum of $10,000 in accordance with articles 1012 and 1671, C. C.

On June 30, 1911, Wendling Miller, as executor and individually, J. J. Woulfe, and A. J. Cahill made in open court one joint motion, in which they asked that on their furnishing bond in the sum of $250 a suspensive appeal be granted them from the judgment making absolute the rule taken on them April 10, 1911, by the attorney for absent heirs to show cause why the executor and the attorney should not be disallowed all compensation, and why the fee of the notary should not be fixed, and an order of appeal was made accordingly.

On July 7, 1911, the executor presented a petition asking for a suspensive appeal from the judgment putting the heirs in possession,

and asking, also, that the court fix the amount of the bond.

The judge granted the appeal, and fixed the bond in the sum of $1,000.

For the first of these appeals the appellants, namely, the executor, Wendling Miller, as executor and individually, J. J. Woulfe, and A. J. Cahill, furnished separate bonds, each for $250. For the other appeal, the executor furnished bond in the amount fixed by the court, $1,000.

In this court, Stijepo Dezin, agent of the heirs, has moved that the two appeals be dismissed.

As to the appeal from the judgment on the rule of the attorney for absent heirs, the grounds of the motion for dismissal are:

(1) That the appellants should have applied for the appeal by separate motions, instead of in one joint motion.

(2) That the appeal was granted to the appellants collectively, and hence that they have not taken any appeal individually.

(3) That this court is without jurisdiction of the appeal, because there is no demand made against the succession by the appellants, and therefore there is no amount in controversy.

(4) That, if it be held that the compensation of the executor is fixed by law, then that the amount of the bond is too small.

(5) That, if it be held that the fee of the notary is fixed by law, the amount so fixed by law falls below the lower limit of the jurisdiction of this court.

As to the appeal from the judgment on the rule of the agent of the absent heirs to be put in possession, the grounds of the motion for dismissal are:

(1) That the executor is without appealable interest in the matter, he not being affected, and no right of his being affected, directly or indirectly, by said judgment.

(2) That the bond is insufficient.

(3) That Wendling Miller, the executor, has departed this life since the lodging of said appeal in this court, and that no other executor has been appointed, and that none will ever be appointed, because the estate has been fully administered and the heirs put in possession, and because the only person who might have quality to ask for the appointment of a successor to said executor would be the heirs of the succession or the legal representatives of the said deceased executor, and that these parties will not do so, but, on the contrary, ask that said appeal be dismissed.

This last ground is supported by an annexed document showing the consent of the legal representatives of the deceased executor to the dismissal of the appeal.

[1] 1. Taking up the foregoing grounds seriatim, we do not see what possible objection there could be to the appellants joining in one motion, especially when they had been joined in the rule, and had joined in their answer, and been included in one and the same judgment. Moreover, this court has held that, where there has been but one judgment, several defendants may join in one motion for appeal, even though they had severed in their defenses and filed separate answers. Pasley v. McConnell, 38 La. Ann. 472; State ex rel. v. Judge, 39 La. Ann. 1041, 1116, 6 South. 27.

[2] 2. As to the insufficiency of the amount of the bond, nothing can be better settled than that for the suspensive appeal rejecting a claim against a fund in the possession of the court a bond for costs is sufficient, and that the judge fixes the amount. State ex rel. v. Judge, 39 La. Ann. 1041, 1116, 6 South. 27.

[3] 3. As to the appellants having joined in one motion and therefore not having appealed individually, their interests were separate and their appeals, although applied for in one motion and granted in one order, were separate.

[4] 4, 5, 6. The objections raised by these three grounds, namely, that there is not any specific amount claimed by the appellants, and that this court has no jurisdiction of the appeal, are without merit. It is a plain proposition, needing no development, or enforcement by argument, that a party against whom judgment has been rendered is entitled to an appeal to some court, if there be a court having jurisdiction of the case on appeal; and nothing is better settled than that in matters incident to the settlement of a succession and a distribution of its funds the jurisdiction of the appellate court is tested by the amount of the assets of the succession, and the amount of the assets of the present succession comes within the jurisdiction of this court.

The motion to dismiss the appeal taken from the judgment on the rule of the attorney for absent heirs must therefore be denied, except as to the executor, individually, whose legal representatives consent to such dismissal.

The legal situation on this appeal is peculiar, in that the attorney for absent heirs who was plaintiff in the rule is no longer in office. But he has been succeeded by the legal heirs whom he represented. These heirs have been recognized as such by a judgment unappealed from and now final.

[5] We pass now to the motion to dismiss the other appeal, that taken by the executor from the judgment on the rule of the heirs to be put in possession. We find that the appellees have assumed in argument that the consent of the legal representatives of the deceased executor was conclusive, and that, therefore, the other grounds assigned in the motion to dismiss need not be considered.

We are not of that opinion. The legal representatives of the deceased executor can represent him only personally. "The powers of the testamentary executor do not go to his heirs." C. C. art. 1680. Therefore these legal representatives of the deceased executor are without authority to consent to the dismissal of an appeal taken by the executor officially.

[6] We have considered whether the sequestration which deprived the executor of the custody and control of the property of the estate can be deemed to have deprived him of his right to possession, or, in other words, of the legal seisin given him by the will and by the law, and have concluded that it did not necessarily do so, since the said sequestration was a mere conservative measure affecting in no way the legal rights of the parties. The executor may well have been willing that the sheriff, and not he, should be charged with the responsibility for the property so long as the property should remain in custodia legis to answer for the payment of the debts of the estate, including those to himself for his commission and to his attorney and the notary for the services rendered the succession.

[7] The legal representative of the appellant succession having died, and no successor having been appointed, the legal situation is that the appellant succession is unrepresented in this court. Ordinarily, in such a condition of things, no proceedings could be had on said appeal until a legal representative had been duly appointed for the said appellant succession and had duly made himself a party of said appeal; but under the peculiar circumstances of this case, the will having been fully executed by the payment of the only legacy in it, and the heirs having been recognized and being present through their duly accredited agent, and all the debts of the succession, saving possibly those to the attorney and the notary of the succession, having been paid, and for these two possible debts there being full adequate recourse upon the bond executed by the said heirs to meet all debts, and there being really no one

having an interest to provoke the appointment of an executor, we can discover no good, practical reason why the said appeal should not be dismissed.

The motion to dismiss the appeal taken by J. J. Woulfe and A. J. Cahill is therefore denied; and the appeals herein are otherwise dismissed at the cost of the appellants.

### On Rehearing.

PER CURIAM. It is ordered by the court that the rehearing applied for in this case be granted as to appeal taken by Wendling Miller, executor, individually, and otherwise refused.

### On the Merits.

PROVOSTY, J. The matter involved in this appeal is the rule taken by the attorney for the absent heirs on April 10, 1911, upon the executor, the attorney for the succession, and the notary who made the inventory, to show cause why the executor should not be decreed to have forfeited all right to compensation, and why the amount of the fee of the notary should not be fixed as provided by law. The said rule reads as follows:

"On motion of Gilbert L. Dupré, Jr., the duly appointed and qualified counsel for absent heirs herein, and upon suggesting to the court that the inheritance tax due the state of Louisiana by this succession must be paid prior to the 17th day of April, 1911, or otherwise this estate will be subject to a penalty of twenty per centum on the tax due,

"And upon further suggesting to the court that it is the intention of the state of Louisiana, through its inheritance tax collector, for this parish to exact said penalty,

"And upon further suggesting to the court that an account has been filed herein by the executor of this estate, but that upon said account the fees of the executor and of his attorney and of the notary who made the inventory of this estate do not appear,

"And upon further suggesting to the court that said inheritance tax cannot be adjusted until the fees of the executor, his attorney, and the notary are fixed, and that same should be fixed forthwith,

"And upon further suggesting to the court that by reason of the mismanagement of this estate by the executor and by his attorney mover is of the opinion and believes, and so avers, that neither of them is entitled to any compensation for services rendered,

"It is ordered by the court that Wendling Miller, executor of this estate, and A. J. Cahill, his attorney of record, do show cause on Thursday morning, April 13, 1911, at 10 o'clock a. m., why this rule should not be made absolute, and why there should not be judgment in favor of this estate and against A. J. Cahill and Wendling Miller, attorney and executor, respectively, thereof, declaring and decreeing that they have forfeited any right or claim for compensation for services therein, and disallow the same on the ground of unfaithful and careless management of the funds of this estate.

"And it is further ordered by the court that James J. Woulfe, notary public, do show cause on the same day and hour why his fee for making the inventory herein should not be fixed as provided by the law of this state.

"And it is further ordered that they show cause why mover should not be granted such further, general, and equitable relief as may be necessary or proper in the premises.

"[Signed] Porter Parker, Judge."

To this rule the following answer was filed:

"Now into court, through their undersigned counsel, come Wendling Miller, testamentary executor of this estate, A. J. Cahill, attorney for said executor, and James A. Woulfe, notary public, made defendants in the rule taken by the attorney for the absent heirs herein on April 10, 1911, in the above entitled and numbered cause, and, appearing herein solely for the purpose of this exception, excepts to the said rule on the following grounds, to wit:

"(1) That said rule discloses no legal cause of action.

"(2) That plaintiff in said rule is no longer an officer of this court, his appointment having been vacated by judgment of this court since the filing of this rule and is now without capacity or interest herein.

"(3) That the allegations of said rule as to defendants are vague and indefinite, and will not permit of safe and satisfactory answer and defense.

"Wherefore exceptors pray that the said exceptions be maintained, and that said rule be discharged.

"And, in the event that said exceptions should be overruled by the court, the defendants in rule, reserving the benefit of said exceptions and without waiving or in any manner abandoning the same, but, on the contrary, reiterate the same, for answer to said rule say: That the allegations of said rule relative to the inheritance tax are erroneous, and not in accordance with section 24 of Act No. 109 of the General Assembly of 1906.

"Wherefore respondents pray that said rule be discharged.

"[Signed]      A. J. Cahill,
        "Chas A. Butler,
                "Attorneys."

[8] The exceptions contained in this answer were overruled by the court. On the trial of the rule the defendants in rule objected to all evidence in support of the rule on the ground that "no charge of mismanagement or maladministration had been made against any of the officers or officials named in the rule." The court overruled the objection as going to the effect. The exception of vagueness as well as this objection to evidence should have been sustained.

"Vague and general allegations cannot support a petition." Hennen, Dug. Vo. Pleading, p. 1144.

The acts of mismanagement and maladministration should have been specifically stated. Especially when a penalty of forfeiture is sought to be enforced should the allegations be specific. Compton v. Compton, 9 La. Ann. 499; Succession of Hernandez, 46 La. Ann. 962, 15 South. 461, 24 L. R. A. 831; Jenkins v. Maier, 118 La. 131, 42 South. 722.

"A suit to recover a penalty for violating an ordinance providing for the repair of sidewalks must describe defendant's property and the nature of the repairs required." New Orleans v. Gordon, 12 La. Ann. 749.

[9] Plaintiff was not allowed to file an amended petition alleging that the defendant was "a man of notoriously bad conduct, and ought, therefore, to be removed from the natural tutorship of his children."

This court said:

"Such an allegation would be immaterial. The party should allege particular facts of which the defendant was guilty in order to enable the court to determine whether such particular facts constituted, within the terms of the law, notoriously bad conduct." Edwards v. Morrow, 12 La. Ann. 888.
"Vague and general allegations are not sufficient to put a defendant on his defense." Perkins v. Potts, 8 La. Ann. 14.

Where the allegation was that the formalities of law had not been observed in a seizure and sale of property, the court said:

"This objection is so general that it amounts to nothing." Stevens v. Pinneo, 26 La. Ann. 618.

"Indirect allegations that the officers of a corporation against whom suit has been brought 'had failed in their duty in certain respects,' and 'had not taken due precautions to ascertain the fitness of an employé before placing him in charge of dangerous machinery,' are insufficient to charge such officers with liability, when it is not alleged what part, if any, such officers were called on to take in the premises within the scope of the duty imposed upon them by virtue of their office, and wherein they failed in the performance of such duty." Joseph Henry et al. v. Brackenridge Lumber Company, Limited, et al., 48 La. Ann. 950, 20 South. 221.

Citations to this same effect could be multiplied almost indefinitely.

The judgment appealed from is therefore set aside, the exception of vagueness is maintained, and the rule herein is dismissed as in case of nonsuit at the cost of the plaintiff in the rule.