515 So.2d 1074 (1987)
CANTRELLE FENCE AND SUPPLY COMPANY, INC., Carol Cantrelle, Norma K. Cantrelle, Wanda Cantrelle Romero and Charmaine Cantrelle Chaisson, Individually and as Natural Tutrix of the Minor Chrystal Chaisson
v.
ALLSTATE INSURANCE COMPANY.
No. 87-C-1109.
Supreme Court of Louisiana.
November 30, 1987.
Rehearing Denied January 7, 1988.
*1075 Stephen M. LaRussa, David Norman, Houma, for applicant.
Keith M. Whipple, Houma, for respondent.
DIXON, Chief Justice.
*1076 The issue here is whether C.C.P. 425[1] precludes, as a "division of obligation," the bringing of a second, separate suit for penalties and attorney's fees under R.S. 22:658[2] after a previous suit for uninsured motorist coverage against the plaintiffs' insurer.
The trial court maintained Allstate's exception based on C.C.P. 425 and dismissed with prejudice plaintiffs' R.S. 22:658 claim against Allstate. The court of appeal reversed and remanded. We affirm, finding plaintiffs' claim for penalties and attorney's fees pursuant to R.S. 22:658 not precluded by C.C.P. 425.
On March 27, 1983 the plaintiffs were involved in an automobile accident in Terrebonne Parish. Plaintiffs occupied a vehicle owned by Cantrelle Fence and Supply Company, Inc. and driven by Norma K. Cantrelle. Allstate Insurance Company was the insurer of the plaintiffs' vehicle for both liability and uninsured motorist coverage in the amount of $300,000. The driver and the owner of the vehicle which hit and injured the plaintiffs were uninsured or underinsured motorists, and, therefore, plaintiffs brought suit against their own uninsured motorist carrier, Allstate. On July 2, 1985 the suit was tried by bench trial in the Thirty-Second Judicial District Court and plaintiffs were awarded a total of $256,807.31 in damages against Allstate.
Then on July 11, 1985 plaintiffs filed a separate suit against Allstate claiming attorney's fees and penalties under R.S. 22:658. In this second suit, plaintiffs claimed Allstate arbitrarily and capriciously, and without probable cause refused to pay the uninsured motorist benefits due within sixty days after demand as required by statute. In response to this second suit, Allstate filed an exception of prescription which was denied by the trial court. Allstate then filed various exceptions, including the one at issue here, that plaintiffs violated C.C.P. 425 by "improper division of obligation." Allstate alleged plaintiffs had previously filed suit against the tortfeasor and Allstate as the uninsured motorist carrier and had obtained a judgment in their favor. Allstate argued plaintiffs should have sought penalties and attorney's fee in the first suit, and C.C.P. 425 precluded any such claims brought in a second suit. After a hearing on the exceptions on July 20, 1986, the trial court rendered judgment maintaining Allstate's exception based on article 425 and dismissed plaintiffs' suit against Allstate with prejudice. The First Circuit Court of Appeal, in a per curiam decision not designated for publication, reversed the trial court's judgment and remanded the case for further proceedings. The court of appeal relied on Louisiana Business College v. Crump, 474 So.2d 1366 (La.App. 2d Cir.1985) and Sutterfield v. Fireman's Fund American Insurance Co., 344 So.2d 1159 (La.App. 4th Cir.1977) and distinguished Foret v. Aetna Life and Casualty Co., 391 So.2d 526 (La. App. 3rd Cir.1980). The court of appeal said that although plaintiffs' R.S. 22:658 claims should have been litigated in the first lawsuit, the statutory claims for penalties and attorney's fees set forth "a separate obligation or grounds of recovery *1077 from the original tort action." 507 So.2d 22.
The sources of article 425 are C.P. 91(2) and 156[3] and the Quebec Code of Civil Procedure art. 87(2) (now article 66(2).[4] Comment (c) of article 425 says that the "rule of Art. 87 of the Quebec Code of Civil Procedure is well established by the jurisprudence of Louisiana." The cases cited under the Comment indicate the nature of the division of obligation which was contemplated by the Quebec Code and out of which the present Louisiana article grew. State ex rel. Dobson v. Newman, 49 La. Ann. 52, 21 So. 189 (1897) is a case in which the respondents, Golson Bros., filed seventeen suits simultaneously, each for $10.00 and each identical in every respect, except as to the date. The court found the suits all based on "one cause of action," namely that the relator refused to lease respondents certain stalls in a market. The court found the cause of action was divided in order to avoid and evade the jurisdiction of the district court and to deprive relator of his legal right to appeal.
In Kearney v. Fenerty, 185 La. 862, 171 So. 57 (1936), the plaintiff filed two suits against defendant, the first claiming $175.00 represented by seven promissory notes signed on May 5, 1936 for $25.00 each and the second claiming $200.00 represented by eight promissory notes signed on the same date as the first seven notes and each also for $25.00. Again the court found a "single matured obligation"a series of identical notes representing a single debt with fifteen installments, which became a single matured obligation because of an acceleration agreement. The court found the cause of action had been divided for the purpose of defeating the jurisdiction of the civil district court. See also Reynolds & Henry Construction Co. v. Mayor, etc. of Monroe, 47 La.Ann. 1289, 17 So. 802 (1895).
These cases and others indicate that the most frequent use of C.C.P. 425 and its antecedents was to comply with the lower jurisdictional limits of courts that might be more convenient to the plaintiff, a consideration absent in the case before us.
"Obligation" is defined in the 1984 revision of the subject in the Civil Code as follows:
"An obligation is a legal relationship whereby a person, called the obligor, is bound to render a performance in favor of another, called the obligee. Performance may consist of giving, doing, or not doing something." C.C. 1756.
Comments (a) and (b) to article 1756 provide as follows:
"(a) This definition is based on C.C. Arts. 1756, 1761, and 2123 (1870). It does not change the law.
(b) This Article makes it clear that an obligation is a legal relationship rather than a mere duty to perform. In the Louisiana Civil Code of 1870, `obligation,' in general, is made synonymous with `duty,' while a `civil' obligation is defined as a `legal tie.' C.C. Arts. 1756 and 1757(3) (1870). This dual approach has been eliminated in this revision in order to confine the code definition to obligations that, whether civil or natural, are recognized at law."
The Louisiana Law Institute's 1984 revision of the Obligations Title of the Civil Code is introduced by a valuable "Exposé *1078 des Motifs" by the reporter, Saul Litvinoff, preceding C.C. 1756 in West's Civil Code (Vol. 6). Divisible and indivisible obligations are discussed in § 7, p. 15 of Vol. 6. As the reporter there notes, the new C.C. art. 1815 follows the approach of the Italian Civil Code, "according to which the divisibility vel non of an obligation is determined by the object of its performance. An obligation is divisible when the object of its performance, by its nature, is susceptible of division.... As has been said, an object that cannot be intellectually divided could hardly be found in the whole universe."
A contract can give rise to more than one obligation; the contract of sale, for example, involves the obligation to deliver the thing sold and the obligation to pay the price. 6 S. Litvinoff, La.Civil Law Treatise § 1 (1969). In the same way a single tort may give rise to multiple obligations. This concept is recognized by the court in Sutterfield, supra, in which the plaintiff's right to institute separate suits for property damage and uninsured motorist coverage is approved by the court and found not to be precluded by article 425.
The problem presented is only the judicial enforcement and the prohibition against "bringing separate actions on different portions thereof." C.C.P. 425. "Cause of action" (C.C.P. 425, "black letter" title) has had extensive discussion in our jurisprudence, and furnishes a practical guide to determine whether an obligation is divisible.
This court as well as the commentators have noted that "cause of action" as used in former C.C. 2286 (now R.S. 13:4231) is a mistranslation of the French "cause" in the source provision, Article 1351 of the Code Napoleon. In the res judicata provisions, properly translated the phrase should read, "[t]he demand must be founded on the same cause...." This court has previously discussed at length this mistranslation and its meaning for purposes of deciding whether a suit is precluded under the civilian concept of res judicata. Mitchell v. Bertolla, 340 So.2d 287, 291 (La. 1976). In that case the court said, "The cause is said to be the juridical or material fact which is the basis of the right claimed, or the defense pleaded." It can be likened to "grounds" or the principle upon which a specific demand is grounded. This is a narrower concept than the common law "cause of action." "Cause is the principle upon which a specific demand is grounded while cause of action embraces the cause and the demand, and is related to the party making demand." Comment, Preclusion Devices in Louisiana: Collateral Estoppel, 35 La.L.Rev. 158, 165 n. 41 (1974). The common law theory of res judicata precludes relitigation of a "cause of action" and, whether actually litigated or not, all grounds in support of the cause of action are merged in the judgment so that relitigation of the "cause of action" on different grounds is barred. Under the civilian doctrine, however, because "cause" is roughly analogous to "theory of recovery" a second suit on a different "ground" is not precluded. Thus, with minor exceptions, the common law "might have been pleaded" rule is inapplicable in Louisiana. Res Judicata in Louisiana Since Hope v. Madison, 51 Tul.L.Rev. 611, 621 (1977).
This reasoning applies as well in the present case. Where the words "cause" or "cause of action" are used interchangeably with the word "obligation," obligation is the "grounds" or "theory of recovery" on which an action is brought. The uninsured motorist provision of the insurance policy and R.S. 22:658 provide separate grounds or theories of recovery just as in Sutterfield, supra, property damage and uninsured motorist coverage represent separate grounds for recovery.
In McDill v. Utica Mutual Insurance Co., 475 So.2d 1085 (La.1985) the court outlined what must be proven in a claim for penalties and attorney's fees under R.S. 22:658. Under this statute, the plaintiff has the burden of proof to show (1) the insurer failed to pay within sixty days after "satisfactory proof of loss" and (2) the insurer was arbitrary and capricious in failing to pay. These elements differ from, and are in addition to, the elements which must be proven to establish a "satisfactory *1079 proof of loss" for a uninsured motorist claim alone where the plaintiff is required to prove: (1) the owner/operator of the other vehicle was uninsured or underinsured; (2) that he was at fault; (3) that such fault gave rise to damages; and (4) the extent of the damages.
From an analysis of the elements which must be proven, it becomes clear that the juridical facts which give rise to litigation in the present case create a different cause of action (a different obligation) from that previously raised in the case against Allstate under the uninsured motorist coverage of the insurance policy. The present suit involves an obligation arising out of the penalty statute, R.S. 22:658, which is separate and distinct from the obligation arising out of the contractual relationship under the insurance policy.
The two cases relied on by the court of appeal, Crump, supra and Sutterfield, supra, illustrate other kinds of separate obligations growing out of different juridical facts which will not be precluded by article 425.[5]Crump deals with a situation in which the plaintiff brought the first suit on an open account for tuition due and the second suit for the balance due on a loan to the student from a fund established by federal funds. The court found the plaintiff had not divided its cause of action because the two suits were based on separate causes.
Sutterfield, supra, as discussed earlier, involved one suit for coverage under the property damage provisions of the insurance policy and a second suit filed one week later for coverage under the uninsured motorist obligation of the policy. Justice Lemmon, writing for the court of appeal in Sutterfield, held that the insurer undertook several obligations by entering into the insurance contract. The accident not only gave rise to a tort obligation due by the uninsured motorist tortfeasor to repair damages, but also gave rise to two contractual obligations due him by his own insurer. "In an action on the first `obligation due him,' it is necessary for Sutterfield to prove a loss caused by collision and the amount of the loss. In an action on the second `obligation due him,' it was necessary for him to prove legal entitlement to damages from an uninsured motorist because of bodily injury and the amount of damages." Sutterfield, supra at 1162. The same analysis in the present case requires the conclusion that the plaintiffs have not divided their causes of action.
C.C.P. 425 is inapplicable in the present case because the two suits brought by the plaintiffs were based on separate obligations and do not involve a division of obligation. We affirm the judgment of the court of appeal and hold that the plaintiffs' suit is not precluded by C.C.P. 425.
There is now judgment in favor of the plaintiffs, Cantrelle Fence and Supply Company, Inc., Carol Cantrelle, Norma K. Cantrelle, Wanda Cantrelle Romero and Charmaine Cantrelle Chaisson, individually and as natural tutrix of the minor Chrystal Chaisson and against defendant, Allstate Insurance Company, overruling defendant's exception, at the cost of defendant.
CALOGERO, J., concurs and assigns reasons.
LEMMON, J., concurs, noting that defendant's separate obligations arise from separate statutes and require different elements of proof.
COLE, J., concurs for reasons assigned by CALOGERO, J.
MARCUS, J., dissents and assigns reasons.
WATSON, J., dissents for reasons assigned by MARCUS, J.
CALOGERO, Justice, concurring.
I agree with the holding of the majority opinion, but write separately to note that our holding that a claim for uninsured motorist coverage is a separate "cause" from a claim for penalties and attorney fees *1080 against the U.M. carrier under R.S. 22:658, may justify a reexamination by the trial court of the defendant's contention that this case is prescribed.
As noted in the majority opinion, the defendant first excepted to the petition on the ground that it was prescribed. The defendant then filed the exception of "improper division of obligation" which is before us in this case. I would further note that in its written reasons for the judgment denying the prescription exception, the trial court ruled that even though the present action was instituted more than two years after the accident, and thus was filed beyond the prescriptive period made applicable to U.M. claims by R.S. 9:5629, the time for filing the present claim for statutory penalties and attorney fees was interrupted by the previous suit for U.M. benefits.
In light of our holding at this juncture of the case that the two suits constitute separate claims or causes of action, I believe that the prescription matter is as yet unresolved. While I of course do not pass here on the proper disposition of the prescription issue, it is obvious that our ruling today at least provides the defendant with an argument which was not clearly available at the time that the original exception of prescription was urged.
MARCUS, Justice (dissenting).
I disagree with the majority's contention that the plaintiffs' claims for penalties and attorney fees are not precluded by La.Code Civ.P. art. 425. The insurer had a single obligation to pay the claims due promptly or be subject to penalty. The plaintiffs divided that obligation by bringing one suit for claims due and one suit for the penalties and attorney fees. When the plaintiffs brought the first suit to enforce only a portion of the obligation to pay promptly, they lost their right to enforce the remaining portion. Accordingly, I respectfully dissent.
NOTES
[1] "An obligee cannot divide an obligation due him for the purpose of bringing separate actions on different portions thereof. If he brings an action to enforce only a portion of the obligation, and does not amend his pleading to demand the enforcement of the full obligation, he shall lose his right to enforce the remaining portion." C.C.P. 425.
[2] "A. All insurers issuing any type of contract, other than those specified in R.S. 22:656 and R.S. 22:657, shall pay the amount of any claim due any insured, including any employee under Chapter 10 of Title 23 of the Revised Statutes of 1950, within sixty days after receipt of satisfactory proofs of loss from the insured, employee or any party in interest.

B(1) Failure to make such payment within sixty days after receipt of such proofs and demand therefor, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of ten percent damages on the total amount of the loss, payable to the insured, or to any of said employees, together with all reasonable attorney fees for the prosecution and collection of such loss, or in the event a partial payment or tender has been made, ten percent of the difference between the amount paid or tendered and the amount found to be due and all reasonable attorney fees for the prosecution and collection of such amount." R.S. 22:658 A and B(1).
[3] "When the jurisdiction of the judge before whom a suit is brought is limited to a certain sum, the question of jurisdiction must be decided by the amount claimed, and not by the sum actually due, not including, however, the interest and the costs which have been subsequently incurred.

But if one, in order to give jurisdiction to a judge, demand a sum below that which is really due to him, he shall be presumed to have remitted the overplus, and after having obtained judgment for the sum he had claimed, he shall lose all right of action for that overplus." C.P. 91.
"If one demands less than is due him, and do not amend his petition, in order to augment his demand, he shall lose the overplus." C.P. 156.
[4] "Several causes of action may be joined in the same suit, provided that the recourses exercised are not incompatible or contradictory, that they seek condemnations of a like nature, that their joinder is not expressly prohibited and that they are susceptible of the same mode of trial.

A creditor cannot divide a debt that is due, for the purpose of suing for the several portions of it by different actions." Quebec Code of Civil Procedure art. 66 (formerly art. 87).
[5] The decision in Foret v. Aetna Life & Casualty Co., 391 So.2d 526 (La.App. 3rd Cir.1980), insofar as it conflicts with this opinion, is overruled.